**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| TEAMSTERS LOCAL UNION NO. 355, | | |
| a/w INTERNATIONAL BROTHERHOOD | * | |
| OF TEAMSTERS *et al*, | | |
| | * | |
| Plaintiffs, | | |
| | * | |
| v. | | |
| | * | Civil No. 23-2261-BAH |
| TOTAL DISTRIBUTION SERVICES, INC., | | |
| *et al.*, | * | |
| | | |
| Defendants. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## <u>MEMORANDUM OPINION</u>

Plaintiffs Teamsters Local Union No. 355 ("Local 355"), affiliated with the International Brotherhood of Teamsters, and Brian Bielawski ("Bielawski"), on behalf of himself and all others similarly situated (collectively "Plaintiffs"), bring this suit against Defendants Auto Warehousing Company ("AWC") and Total Distribution Services, Inc. ("TDSI") (collectively "Defendants"), alleging a violation of the Maryland Economic Stabilization Act, Maryland Code, Labor & Employment §§ 11-301–11-306 (the Maryland "WARN" Act).[1]  ECF 1.  Pending before the Court are motions to dismiss filed by each Defendant.  ECF 13 (TDSI motion to dismiss); ECF 15 (AWC motion to dismiss).  Plaintiff filed oppositions to both motions, ECF 18; ECF 19, and both

---

[1] WARN is obviously a curious acronym to use for the Maryland Economic Stabilization Act.  The reason for its use is that the law is based, at least in part, on a federal analogue called the Worker Adjustment and Retraining Notification Act, to which the acronym "WARN" is better suited.  *See* 29 U.S.C. §§ 2101 – 2109.  It is common to refer to state counterparts to the federal law as "WARN" acts or even "mini-WARN" acts.  The parties have used the term WARN Act to refer to the Maryland law at issue in their filings and the Court will do the same.

Defendants filed replies, ECF 20; ECF 21.  All filings include memoranda of law and exhibits.[2]
The Court has reviewed all relevant filings and finds that no hearing is necessary.  *See* Loc. R.
105.6 (D. Md. 2023).  Accordingly, for the reasons stated below, both Defendants' motions to
dismiss, ECF 13 and ECF 15, are **GRANTED**.

## I.    <u>BACKGROUND</u>

Plaintiff Bielawski formerly worked for Defendants at an "automobile-distribution
facility" in Jessup, Maryland, known as "Annapolis Junction." ECF 1, at 2 ¶¶ 1–3.  While
Bielawski worked for Defendants, he was represented by Local 355, which was party to a
collective bargaining agreement governing the conditions of employment at Annapolis Junction
that expired in November 2022.  *Id.* at ¶ 3.  Defendants and Local 355 engaged in negotiations to
establish an updated collective bargaining agreement for more than six months, until May 2023.
*Id.* at 2–3 ¶ 4.  "On May 10, 2023, Defendants abruptly terminated approximately 60 employees
working at Annapolis Junction, including all 47 unionized employees."  *Id.* Plaintiffs allege that
Defendants did not provide any written notice before this termination and allege that the
terminations were effective immediately.  *Id.* at 3 ¶ 5.

Plaintiffs claim that Defendants violated the Maryland WARN Act by not providing 60
days' advance written notice of the terminations.  *Id.* at ¶¶ 5–6.  Defendants now each move to
dismiss the complaint, claiming, among other things,[3] that the Maryland WARN Act does not
provide a private right of action.  ECF 13-1, at 6–11; ECF 15-1, at 4–8.  The Court agrees.

---

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-
generated page numbers at the top of the page.

[3] Defendants also argue that there was no "reduction in operations" sufficient to trigger the WARN
Act's protections.  *See* ECF 13-1, at 9-11; ECF 15-1, at 8-9.  Defendants also allege that any
reduction was the result of a "labor dispute," which would remove any otherwise qualifying actions
outside the purview of the WARN Act pursuant to Md. Code Ann., Lab. & Empl. § 11-302 (a).

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted."  In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'"  *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits."  *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III.   <u>ANALYSIS</u>

Defendants each claim that Plaintiffs' complaint should be dismissed because the Maryland WARN Act does not provide a private right of action.  ECF 13-1, at 6–11; ECF 15-1, at 4–8.  Plaintiffs acknowledge that the Act offers no *express* private right of action but insist it contains

---

*See* ECF 13-1, at 14-15; ECF 15-1, at 9-11. Since the Court finds that the Maryland WARN Act does not provide a private right of action, it does not reach these alternative arguments.

an *implied* private right of action. *See* ECF 18-1, at 4 (arguing for an implied private right of action). Neither side of this dispute offers any case law where a court has considered this issue with respect to the Maryland WARN Act, nor is the Court aware of any such case.

As originally passed, the Maryland WARN Act provided only voluntary guidelines "for employers faced with a reduction in operations." Economic Stabilization Act, 2020 Md. Laws 2157 (codified at Md. Code Ann., Lab. & Emp. § 11-301–§ 11-306). However, subsequent revisions to the WARN Act modified that mandate to require the Maryland Secretary of Labor "to develop mandatory guidelines for employers faced with a reduction in operations." Md. Code Ann., Lab. & Empl. § 11-304 (b)(1). Revisions also added mandatory notice requirements and potential penalties for violations, all to be assessed "by the Secretary [of Labor], or the Secretary's designee." *See* Md. Code Ann., Lab. & Emp. § 11-306. More specifically, the Maryland WARN Act requires that qualifying employers provide at least 60 days' notice to qualified employees and their collective bargaining units before a reduction in operations. Lab. & Emp. § 11-305(a). The Act also requires that the Maryland Secretary of Labor develop regulations regarding the issuance of orders to employers violating the Act and the assessment of a "civil penalty" for employers found to have violated the Act. Economic Stabilization Act, 2020 Md. Laws 2157 (codified at Md. Code Ann., Lab. & Emp. § 11-301–§ 11-306).

"A private right of action allows an individual to bring an action in his or her personal capacity to enforce a legal claim." *Aleti v. Metro. Baltimore, LLC*, 279 A.3d 905, 920 (Md. 2022) (citing *State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 517, 92 A.3d 400 (Md. 2014)). "Under Maryland law, the test for an implied cause of action is an exacting one." *Clark v. Bank of Am., N.A.*, 561 F. Supp. 3d 542, 554 (D. Md. 2021). The Court does not read an implied private right of action into a statute without clear indication that the legislature intended it to do so. *See Baker*

*v. Montgomery Cnty.*, 50 A.3d 1112, 1122 (Md. 2012) ("A private cause of action in favor of a particular plaintiff or class of plaintiffs does not exist simply because a claim is framed that a statute was violated and a plaintiff or class of plaintiffs was harmed by it.  Rather, the issue is a matter of statutory construction." (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)).

In considering whether an implied private right of action exists in a given statute, Maryland courts ask three questions:

> (1) Is the plaintiff one of the class for whose special benefit the statute was enacted?
>
> (2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?
>
> (3) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

*Aleti*, 279 A.3d at 920–21 (quoting *Baker v. Montgomery Cnty.*, 50 A.3d 1112, 1122 (Md. App. 2012)).  The most important of these inquiries is whether the legislature intended to create a private right of action.  *Id.* at 921.  The Court will address each of these inquiries in turn.

### A.    Plaintiffs are members of the class of people for whose special benefit the statute was enacted.

Defendants both argue that the Maryland WARN Act "does not inure to Plaintiffs' special benefit," ECF 13-1, at 10 (capitalization adjusted), because "the Maryland WARN Act is not tailored to provide a benefit to a particular subgroup of the public," *see* ECF 13-1, at 11; ECF 15-1, at 6.  Plaintiffs strongly disagree.  ECF 18-1, at 4; ECF 19-1, at 4.

When a statute is crafted in such a way to "inure[] only to the benefit of a discrete class," this factor will weigh in favor of the creation of a private right of action.  *Clark*, 561 F. Supp. 3d at 555.  For example, in *Clark*, the statute in question required that certain lenders pay to the borrower the interest earned on the related escrow account.  *Id.* (citing Md. Code Ann., Com. Law

§ 12-109 (b)(1)).  Despite acknowledging that the law did "not expressly specify a class for whose benefit it was enacted," the Court nonetheless found that the plaintiff, a borrower, was a member of a discrete class which was benefitted by the statute.  *Id.* at 555.

Here, as in *Clark*, the law in question is specifically designed to offer protections for a discrete group of people.  The WARN Act specifically gives protections to workers employed by qualifying employers,[4] ensuring that they are given adequate notice prior to termination.  Md. Code Ann., Lab. & Emp. § 11-305(a).  This is not a provision that benefits the state as a whole, but rather one that targets protections towards a specific group.  Plaintiffs – having alleged that their jobs were abruptly terminated with virtually no notice – are unquestionably part of that group. As such, this factor weighs in favor of a private right of action.

**B.      There is no evidence of legislative intent to create a private right of action.**

 "Where the legislative history does not indicate any discussion whatsoever as to whether a statute gives rise to such a right, the fact that the ordinance is silent would weigh heavily against an intent . . . to create a private cause of action."  *Clark*, 561 F. Supp. 3d at 555 (quoting *Sugarloaf Citizens Ass'n v. Gudis*, 554 A.2d 434, 437–38 (Md. App. 1989)).  However, this Court has also cautioned that in the context of a state statute, the absence of legislative history indicating an intent to create a private right of action "is entitled to little weight" because, as opposed to federal legislation, there is a "comparative sparsity of legislative history accompanying Maryland state legislation."  *IVTx, Inc. v. United Healthcare of Mid-Atl., Inc.*, 112 F. Supp. 2d 445, 447 (D. Md. 2000); s*ee also Staley v. Americorp Credit Corp.*, 164 F. Supp. 2d 578, 580–81 (D. Md. 2001) (same).  Thus, though both sides agree that there is no explicit evidence that state legislators intended to create a private right of action, this is not, standing alone, determinative.  *See* ECF 13-

---

[4] The complaint pleads that Defendants are qualified employers.  ECF 1, at 4 ¶¶ 11–12.

1, at 9 ("There is no indication — whether in the legislative history of the Act or otherwise — that the Maryland legislature intended to confer a private right of action."); ECF 18-1, at 5 ("The available legislative record is silent on the issue of a legislative intent to provide or deny a private right of action for violations of the Maryland WARN Act . . . .").

Defendants argue that Maryland legislators' references to other states' WARN Act analogs that do explicitly include private rights of action during the hearings on the Maryland Economic Stabilization Act suggest that the General Assembly intentionally considered — and discarded — the idea of including a private right of action in Maryland's WARN law.  ECF 13-1, at 10; ECF 15-1, at 10 n.2.  Plaintiff counters that the discussion of other states' laws was narrow in scope and that "it is highly probable that the Maryland General Assembly absentmindedly failed to include a private right of action in the Maryland WARN Act."  ECF 18-1, at 6.  The Court is not inclined to attribute any legislative act to mere "absentminded[ness]," given the longstanding statutory interpretation doctrine that the courts are to interpret every piece of legislation as being crafted meaningfully.  *See State v. Johnson*, 2 A.3d 368, 373 (Md. 2010) ("We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with 'forced or subtle interpretations' that limit or extend its application." (citation omitted)).

The Court finds it instructive that the comments on the Act from legislators and external commentators alike focus solely on the administrative regulations and enforcement mechanisms that provide consequences for violations of the Act.[5]  *See, e.g.,* Economic Stabilization Act:

---

[5] Indeed, even industry groups who opposed the bill did not mention any fears regarding private rights of action, reflecting that the conversation at the time included no such understanding.  *See* Economic Stabilization Act: Hearing on H.B. 1018 before the H. Econ. Comm., 2020 Leg., Ch. 407 (Md. 2020) (statement of Md. Building Industry Assoc.) (lamenting the civil penalties that

7

Hearing on S.B. 780 before the S. Comm. on Fin., 2020 Leg., Ch. 407 (Md. 2020) (statement of Delegate Dereck Davis, Chair, Econ. Matters Comm.) (discussing the enforcement mechanism as one controlled by the "Commissioner"); *see also* Fiscal and Policy Note to H.B. 1018, 2020 Gen. Assemb. (Md. 2020) (discussing policy and financial implications of passage of Economic Stabilization Act and considering administrative enforcement measures but making no mention of private lawsuits).  Thus, it is not merely that the legislature absentmindedly failed to mention the repercussions for violations of the WARN Act, to the contrary, it spoke on the enforcement mechanism and focused exclusively on administrative enforcement to the exclusion of other methods of enforcement.  As the Appellate Court of Maryland made clear in its opinion in *Aleti*, "[t]he existence of [] public enforcement provisions, with no analogous private enforcement remedy, suggests that the [legislative body passing the law] did not intend to authorize a private remedy."  *Aleti v. Metro. Baltimore, LLC*, 254 A.3d 533, 548–49 (Md. App. 2021), *aff'd*, 279 A.3d 905 (Md. 2022).  This strongly suggests that the legislative intent was to provide for enforcement of this law by a regulatory scheme and not by a private right of action.  *See Staley v. Americorp Credit Corp.*, 164 F. Supp. 2d 578, 580 (D. Md. 2001) ("While not drawing any inference from the silence of the legislative record, I am nevertheless persuaded that the General Assembly has acted in a manner which reflects that it did not intend to create a private cause of action for violation[.]").

It also bears noting the state legislature, had it been inclined to do so, was not without a blueprint for how to add a private right of action.  Indeed, the federal WARN Act contains an explicit private right of action.  *See* 29 U.S.C. §2104 (a)(1) (stating that "[a]ny employer who

could be imposed on employers who violate the Act but mentioning nothing about private lawsuits).

orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff . . ."); *id.* § 2104(a)(5) (noting that "[a] person seeking to enforce such liability. . . may sue either for such person or for other persons similarly situated, or both, in any district court of the United States for any district in which the violation is alleged to have occurred, or in which the employer transacts business"); *see also* ECF 18-1, at 6 (acknowledging that the federal WARN Act has a private right of action).[6]  In fact, "[a] civil action for damages [under the federal WARN Act] is 'the exclusive remed[y] for any violation [of the Act].'"  *Loc. 217, Hotel & Rest. Emps. Union v. MHM, Inc.*, 976 F.2d 805, 808 (2d Cir. 1992) (third alteration in original) (quoting 29 U.S.C. § 2104(b)).  Thus, it is clear to the Court that the Maryland legislature knew how to include a private right of action in the Maryland WARN Act but chose not to do so.

      **C.**    **It is not consistent with the purposes of the legislative scheme to imply a private right of action.**

      Finally, reading a private right of action into the Maryland WARN Act is not consistent with the overall legislative scheme of the Act.  While Plaintiffs argue that "a private right of action supports the underlying purposes of the Maryland WARN Act," ECF 18-1, at 7, Defendants assert that the Act's express provision of an administrative enforcement scheme renders inappropriate any implied private right of action, ECF 13-1, at 8.  Certainly, allowing for a private right of action

---

[6] Plaintiffs also argue that lawmaker references to the federal analog as being the proverbial "floor" for such legislation reflects an intent by the state to add a private right of action because the federal WARN Act also contained one.  *See* ECF 18-1, at 6.  Though it amounts to pure speculation, the Court notes that the reference to the federal law merely being the "floor" could have been intended as an explanation for why Maryland's WARN Act contains stricter requirements for the number of workers required for an employer to be subject to the law (50 workers, *see* MD Code Ann., Lab. & Empl. § 11-301(c)(1), as opposed to the federal law's 100, *see* 29 U.S.C. § 2101 (a)(1)), and the fact that a layoff of as few as 25 percent or 15 employees, whichever is greater, can trigger application of the Maryland law, *see* MD Code, Labor & Employment § 11-301(e)(1), whereas the federal counterpart that requires a layoff of at least 50 workers, *see* 29 U.S.C. § 2101 (b)(3)(B)(i).

would help to protect workers' rights, a primary purpose of the Act.  However, "it is also entirely reasonable that the [legislature] did not intend to enact such a [] remedy." *Aleti*, 279 A.3d at 926. The statutory scheme at issue here provides for a robust administrative enforcement mechanism, which the Department of Labor's draft regulations further flesh out.  Md. Code Ann., Lab. & Empl. § 11-306 (describing penalties for violation of statute to be enforced by Maryland Secretary of Labor); 50 Md. Reg. 1100 (Dec. 15, 2023) (proposing regulation laying out details of administrative enforcement for Maryland WARN Act).  Given this complex structure, reading a private right of action into this statute could muddy the enforcement waters.  "[F]or those reasons, the remedies for violations that are expressly created in the ordinance are [those public enforcement remedies] left to the discretion of executive authorities." *Aleti*, 279 A.3d at 927 (alteration in original).

There is no indication that an implied private right of action was intended by the General Assembly or would serve the overall legislative scheme of the Maryland Warn Act, and the Court is not permitted to read one into the statute.  Plaintiff's complaint must be dismissed.

## IV.    <u>CONCLUSION</u>

There can be no serious debate that the loss of a job is an upsetting and disruptive event. What Plaintiffs allege happened here is even more unsettling: a sudden and unannounced mass layoff that apparently afforded the affected workers no time to respond, no opportunity to plan for the loss of income, and virtually no time to seek new employment without missing a much-needed paycheck.  However, the question before the Court today is not whether a violation of the Maryland WARN Act occurred.  Instead, the Court is tasked with determining whether the legislation contains a private right of action.  For the reasons noted above, the Court is constrained to conclude that it does not.  Because this Court finds that there is no private right of action under the Maryland

WARN Act, Plaintiffs' complaint is DISMISSED with prejudice.  A separate implementing Order will issue.

Dated: <u>August 26, 2024</u>                                                    <u>                    /s/                    </u>
                                                                                            Brendan A. Hurson
                                                                                            United States District Judge